# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| BARRY SCHMITTOU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:05-cv-0013 |
| v. ) | |
| ) | Judge Aleta A. Trauger |
| METROPOLITAN LIFE INSURANCE ) | Magistrate Judge Bryant |
| CORPORATION, TMG SOLUTIONS, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

On March 29, 2013, the court issued an order in which it remanded plaintiff Barry Schmittou's Physical Claim and Mental Claim for long-term disability benefits to MetLife for further proceedings. (Docket No. 225.)[1] Pursuant to Fed. R. Civ. P. 54(b) and/or Fed. R. Civ. P. 59(e), MetLife has filed a Motion to Reconsider and Alter or Amend that order (Docket Nos. 235 and 236)[2] with respect to the Physical Claim only.

The court's remand order was interlocutory. *See Bowers v. Sheet Metal Workers Nat'l Pension Fund*, 365 F.3d 535, 536 (6th Cir. 2004). Therefore, the court will apply the Rule 54 reconsideration standard, under which a district court may reconsider interlocutory orders when there is "(1) an intervening change of controlling law, (2) new evidence, or (3) a need to correct

---

[1] The factual and procedural history of this case, which was also the subject of a previous remand order, is detailed in earlier opinions by the Magistrate Judge and this court, familiarity with which is assumed. (*See* Docket Nos. 106, 113, 216, and 224.)

[2] MetLife filed a Memorandum of Law in support of its motion (Docket No. 235), but inadvertently failed to include the cover motion with that filing. MetLife filed its formal "motion" immediately thereafter. (Docket No. 236). Both the Memorandum of Law and the separately filed cover motion were docketed as "motions."

1

a clear error of law or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also Butler v. United Healthcare of Tenn, Inc.*, No. 3:07-CV-465, 2011 WL 3300674, at *3-*4 (E.D. Tenn. Aug. 1, 2011) (applying Rule 54 standard in light of *Bowers*).[3] Here, MetLife broadly argues that the court misconstrued the administrative record and committed clear errors of law in light of it.

With respect to Dr. Weber, MetLife does not appear to dispute that it never sent him Dr. Wallace's April 1, 2010 letter. Nor has MetLife disputed that Dr. Weber's report omits any mention of the nystagmus that Dr. Wallace observed in 2008 and acknowledged again in the April 1, 2010 letter. Also, although MetLife is correct that Dr. Weber reports that he spoke with Dr. Wallace about Schmittou's conditions, the section contains no mention of Dr. Wallace's *objective* observation of nystagmus in the left eye. Also, although MetLife is correct that Dr. Weber's report recites Dr. Lavin's reports – including Dr. Lavin's observations of downbeat nystagmus and/or upbeat nystagmus at multiple points – Dr. Weber's report does not reflect any acknowledgment as to how those objective observations by Dr. Lavin would impact Schmittou's vision in the left eye and his associated ability to perform work-related functions.[4] With respect

---

[3] After MetLife filed its motion, Schmittou unilaterally filed a document styled as a "Notice of Appeal in Forma Pauperis" (Docket No. 238), in which Schmittou purports to provide notice of an appeal to the Sixth Circuit from the court's remand order. Because the court's remand order is an interlocutory order, it is not a final judgment from which Schmittou can appeal as a matter of right without leave of court. Therefore, Schmittou's interlocutory notice of appeal does not divest the court of jurisdiction to address MetLife's motion. The court also notes that the Sixth Circuit docket does not reflect any appeal filed by Schmittou.

[4] MetLife suggests that Dr. Weber "concurred with Dr. Lavin" that there was no obvious cause for the nystagmus and other symptoms. However, the court reads the relevant section of Dr. Weber's report as simply reciting Dr. Lavin's findings essentially verbatim. Thus, the sentence on AR 1224 stating that "I could find no obvious underlying cause for his down beat nystagmus" is verbiage copied from Dr. Lavin, which cannot fairly be read as reflecting Dr. Weber's independent evaluation.

to Dr. Goetz, MetLife is correct that Dr. Goetz appears to have been provided with Dr. Wallace's April 2010 letter. However, other than a notation that the letter was among the materials furnished to Dr. Wallace, Dr. Goetz's report contains no reference to that letter. Furthermore, although Dr. Goetz acknowledged that Schmittou was objectively diagnosed with a downbeat nystagmus in the left eye, he did not address the impact of that condition on Schmittou's eye going forward, even as he addressed the impact of objective observations related to Wallace's right eye. Ultimately, despite corroboration by two treating physicians, MetLife's denial letters did not contain any mention of certain objective observations by Schmittou's treating physicians regarding Schmittou's left eye.

With respect to a physical examination, as previously discussed, MetLife's hired physicians implicitly discredited Schmittou's repeated subjective complaints about various debilitating eye conditions, which Schmittou had expressed both to his treating physicians in the past and, following this court's first remand order, directly to MetLife. Moreover, as discussed previously, even Dr. Weber noted the "necessity of follow-up" concerning Schmittou's visual impairments. Although MetLife is correct that its choice to refrain from conducting a physical examination does not *per se* require an arbitrary and capricious finding, it was not clear error for the court to consider that fact as a relevant factor in light of the court's other concerns about the handling of Schmittou's claims, including, *inter alia*, the physicians' implicit credibility determinations, MetLife's selective reliance on particular aspects of the administrative record, and Dr. Weber's suggestion that further evaluation might be necessary. *See Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005); *Kalish v. Liberty Mut./Liberty Life Ass. Co. of Boston*, 419 F.3d 501, 508 (6th Cir.

2005).

MetLife also argues that the court has unfairly shifted the burden of proof onto it. Of course, MetLife is not required to prove that Schmittou is not disabled – *i.e.*, Schmittou is not presumed disabled unless proven otherwise. Nevertheless, the court remains concerned by the fact that MetLife and its physicians simply omitted any discussion of how an objectively observed condition (the nystagmus) would impact Schmittou's eyesight. This would not have required reaching outside the administrative record; indeed, the physicians' analyses required and included some degree of extrapolation to assess the impact of Schmittou's diagnosed eye conditions on his ability to work. In that context, it was not rational to ignore the left eye nystagmus in assessing Schmittou's long-term physical condition.

MetLife also argues that the process violations were relatively minor and/or resulted in no prejudice to Schmittou. The court agrees that issues relating to Dr. Head were minor and likely did not prejudice Schmittou. As to the vocational expert, MetLife is correct that, under appropriate circumstances, a plan administrator is not required to provide a vocational assessment. *See Judge*, 2013 WL 118067, at *661-62. Be that as it may, in this case, MetLife *did* initially conduct a vocational assessment here and, moreover, relied upon that assessment in its letters formally denying Schmittou's benefits claims. Given that MetLife introduced the assessment in the first place, it should have updated the analysis to reflect the additional physical limitations noted by Dr. Goetz.

Finally, the court previously noted its concern that MetLife's dual role might be influencing its decision-making process here. That concern reflected the court's analysis of MetLife's general handling of Schmittou's claims in this case, which (a) has already required

4

two remand orders for further proceedings, and (b) has yet to include an independent psychiatric and/or medical examination that the physicians hired by MetLife suggested are justified to assess Schmittou's long-term physical and mental impairments.

Under the circumstances, the court finds that MetLife has not demonstrated that the court committed a clear error of law or that its decision was manifestly unjust. Therefore, MetLife's motion is hereby **DENIED**. Accordingly, the clerk is directed to close the entries docketed as "motions" at Docket Numbers 235 and 236. The court's March 29, 2013 remand order remains in effect and the case shall remain administratively closed under the conditions set forth therein.

It is so **ORDERED**.

Enter this 7th day of May 2013.

_____
ALETA A. TRAUGER
United States District Judge